747 So.2d 386 (2000)
Anthony R. MARTIN, Petitioner,
v.
STATE of Florida, Respondent.
Anthony R. Martin, Petitioner,
v.
Walter Colbath, et al., Respondents.
Nos. SC93573, SC94012.
Supreme Court of Florida.
January 20, 2000.

ORDER DENYING MOTION FOR REVIEW BY THE COURT EN BANC, ORDER DENYING MOTION FOR REHEARING, AND SANCTION ORDER
In July and September of 1998, Anthony R. Martin filed the two instant petitions *387 seeking writs of mandamus against the Clerk of the Fourth District Court of Appeal and the Chief Judge of the Fifteenth Judicial Circuit Court. On March 17, 1999, this Court consolidated the two petitions and denied them as procedurally barred. Due to Martin's long history of filing procedurally barred and abusive petitions, this Court issued an order requiring that Martin show cause why he should not be prospectively denied indigency status as a sanction for abusing the judicial system. On April 8, 1999, Martin filed a Motion for Review by the Court En Banc and a Motion for Rehearing. This Court hereby denies both the Motion for Review by the Court En Banc and the Motion for Rehearing and finds that sanctions should be imposed upon Martin for the following reasons.
Anthony R. Martin, also or previously known as Anthony R. Martin-Trigona, is one of this State's most active, as well as abusive, pro se litigants. Martin's current petitions generally stem from a decision rendered by the Fourth District Court of Appeal in 1995. In Martin v. Marko, 651 So.2d 819 (Fla. 4th DCA 1995), the Fourth District Court of Appeal issued an opinion in a writ case censuring Martin for his abusive writ practice and his "scurrilous allegations" against numerous judges. Id. at 821. There the court had issued an order to Martin to show cause why his petition for leave to proceed without payment of the filing fee should not be denied for that case and prospectively. In its order to show cause, the court commented on the large number of frivolous appeals and original writ petitions he had filed there. In 1995, the number there surpassed forty-three filings. The court also noted that Martin's filings were not only without merit, but included extremely abusive insults directed at numerous non-respondents, public officials, judges and the judicial system as a whole. The court noted that the "tactic of injecting personal insults into proceedings was first noted by the Illinois Supreme Court as part of the reason for the denial of Martin's admission to the Illinois Bar." Id. at 820 (citing In re Martin-Trigona, 55 Ill.2d 301, 302 N.E.2d 68 (1973), cert. denied, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974)). The court then found that it had inherent authority to refuse to grant indigency status to a pro se litigant as a sanction, despite his actual financial situation, in extreme situations when the litigant had thoroughly abused the court system. The court quoted from an opinion of the United States Supreme Court in which that Court had utilized the same procedure. Id. at 821. In that case, the United States Supreme Court stated:
In order to prevent frivolous petitions for extraordinary relief from unsettling the fair administration of justice, the court has a duty to deny in forma pauperis status to those individuals who have abused the system.
In re Sindram, 498 U.S. 177, 180, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991). Based on these findings, the court had issued the order to Martin requiring that he show cause why he should not be denied in forma pauperis status in the case pending there and prospectively due to his past "pattern and practice of filing frivolous extraordinary writs and appeals." Martin v. Marko, 651 So.2d at 821. Martin had responded by attaching a copy of another lawsuit he was filing against all the judges of the Fourth District Court. The court found the response inadequate, dismissed the petition, and issued an order denying Martin indigency status prospectively. It further instructed its clerk's office to refuse for filing any petitions unless accompanied by the proper filing fee. Id. In 1998, the Fourth District Court of Appeal found in Martin v. State, 711 So.2d 117 (Fla. 4th DCA 1998), that while Martin might be insolvent for purposes of his bankruptcy proceedings, considering the fact that Martin had received income on a regular basis from his rental properties and that he had transferred property and income to family members, he could not be deemed insolvent for purposes of having *388 the Public Defender appointed to defend him in an appeal of his conviction for criminal mischief. Id. at 120.
The Circuit Court of the Fifteenth Judicial Circuit followed suit and issued an administrative order denying Martin indigency status as a sanction for his abuse of that court's legal processes. The Fifteenth Circuit noted that Martin had filed an estimated twenty-seven civil cases there and an equal number in the Seventeenth Judicial Circuit. See In re Anthony R. Martin, Admin. Order No. 2.052-8/98 (Fla. 15th Cir.Ct. Aug. 18, 1998). The court noted the malicious, vindictive, and frivolous nature of those petitions and that the United States District Court for the District of Connecticut had also observed the abusive nature of Martin's petitions. Id. (citing In re Martin-Trigona, 592 F.Supp. 1566 (1984), aff'd, 763 F.2d 140 (2d Cir.1985), cert. denied, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986)).
In addition, the Eleventh Circuit Court of Appeals approved the enforcement of an injunction issued against Martin by the United States District Court for the Southern District of Florida. See Martin-Trigona v. Shaw, 986 F.2d 1384 (11th Cir. 1993). In that case the Eleventh Circuit noted that Martin was a "notoriously vexatious and vindictive litigator who has long abused the American legal system." Id. at 1385.
Martin has filed nearly thirty petitions in this Court. See Martin v. State, 727 So.2d 907 (Fla.1998)(No. 93,707); Martin v. Palm Beach County Sheriff, 718 So.2d 1234 (Fla.1998) (No. 93,271); Martin v. State, 718 So.2d 1234 (Fla.1998)( No. 93,449); Martin v. Palm Beach County Sheriff, 718 So.2d 1234 (Fla.1998)(No. 93,493); Martin v. Fourth Dist. Court of Appeal, 707 So.2d 1125 (Fla.1998)(No. 91,882); Martin v. Fourth Dist. Court of Appeal, 707 So.2d 1125 (Fla.1998)(No. 91,837); Martin v. State, 704 So.2d 520 (Fla. 1997)(No. 91,404); Martin v. Brescher, 658 So.2d 991 (Fla.1995)(No. 85,306); Martin v. Fourth Dist. Court of Appeal, 658 So.2d 991 (Fla.1995)(No. 84,596); Martin v. Towey, 630 So.2d 1100 (Fla.1993)(No. 82,644); Martin v. Ross, 624 So.2d 267 (Fla. 1993)(No. 81,562); Martin v. State, 613 So.2d 6 (Fla.1993)(No. 80,885); Martin v. District Court of Appeal (Special Panel), 613 So.2d 6 (Fla.1992)(No. 80,593); Martin v. District Court of Appeal (Special Second DCA Panel), 599 So.2d 657 (Fla. 1992)(No. 79,378); Martin v. District Court of Appeal (Special Second DCA Panel), 599 So.2d 657 (Fla.1992) (No. 79,553); Martin v. Scott, 599 So.2d 1279 (Fla. 1992) (No. 78,574); Martin v. District Court of Appeal (Special Second DCA Panel), 599 So.2d 657 (Fla.1992)(No. 79,353); Martin v. District Court of Appeal (Special Panel), 595 So.2d 557 (Fla. 1992)(No. 79,167); Martin v. Florida Supreme Court, 595 So.2d 557 (Fla.1992)(No. 79,073); Martin v. District Court of Appeal, 592 So.2d 681 (Fla.1991)(No. 78,791); Martin v. District Court of Appeal, 591 So.2d 182 (Fla.1991) (No. 78,588); Martin v. District Court of Appeal, 587 So.2d 1328 (Fla.1991) (No. 77,991); Martin v. Marko, 582 So.2d 623 (Fla.1991)(No. 77,852); Martin v. Department of Health and Rehabilitative Services, 582 So.2d 623 (Fla.1991) (No. 77,846); Martin v. Martinez, 560 So.2d 234 (Fla.1990)(No. 75,475); Martin-Trigona v. District Court of Appeal, 520 So.2d 585 (Fla.1988)(No. 71,692).
In one of the latest petitions filed here, Martin contested his denial of bail pending an appeal. That petition was denied as procedurally barred since he had already litigated the matter. See Martin v. Palm Beach County Sheriff, 718 So.2d at 1234. In another recent petition, Martin contested the determinations by both the Fourth District Court of Appeal and the Fifteenth Judicial Circuit Court in Palm Beach County that those courts would continue to refuse submission of writ petitions without the payment of filing fees. That petition was also denied. See Martin v. State, 718 So.2d 1234 (Fla.1998)(No. 93,449). In case No. 93,271, Martin again contested the same denial of bail as he had done in case *389 No. 93,493. In addition he personally insulted a variety of people. See Martin v. Palm Beach County Sheriff, 718 So.2d 1234 (Fla.1998)(No. 93,493).
On August 11, 1998, Martin filed another petition challenging the Fourth District Court of Appeal's refusal to grant him indigency status. This time Martin asserted that the reason for the indigency status denial was that the judges of the Fourth District Court of Appeal wanted to disrupt his campaign for the United States Senate. That petition was denied on October 16, 1998. See Martin v. State, 727 So.2d 907 (Fla.1998)(No. 93,707). In this Court's denial order it advised Martin that the continued filing of procedurally barred petitions could ultimately result in sanctions. Id.
The two instant petitions were filed in July and September of 1998. They both concerned the same matter-the continuing refusal by both the Fifteenth Judicial Circuit Court in Palm Beach County and the Fourth District Court of Appeal to permit Martin to file any more legal actions there without the payment of filing fees. He also continued to personally attack the judge who denied him bail, accusing the judge of "kidnaping" him. In addition, scattered throughout these petitions were even more atrocious insults. He made anti-Semitic remarks against the Jewish community as a whole and against justices of this Court. He then insinuated that if this Court did not remedy his problems, he would file a federal lawsuit.
Martin has now responded to this Court's order to show cause. He first asserts that the basis for this Court's punishment is that Martin filed another procedurally barred petition after having been warned in October of 1998 that the continued filing of procedurally barred petitions could result in the imposition of sanctions. He argues that since the two instant petitions were filed in July and September of 1998, he cannot be punished for violating this Court's October 1998 warning. Martin admits that while he did file another petition after the warning (Case No. 94,774)[1], that case is different since it involves serious violations of the law by the Fourth District Court of Appeal.
Contrary to Martin's assertion, the basis of the order to show cause was not simply the filing of another procedurally barred petition in violation of the warning contained in case No. 93,707. This Court does not have to warn a petitioner before issuing an order to show cause. All that is necessary is that the petitioner be given notice and an opportunity to be heard before the sanction is imposed. See Martin v. Circuit Court, 627 So.2d 1298 (Fla. 4th DCA 1993). This Court's order to show cause provided Martin with that opportunity.
The basis for this Court's decision to issue its order to show cause was not merely that Martin has filed repeatedly, but that Martin's style of litigation is so abusive. Nearly everything Martin files is malicious. It appears that Martin's inability to refrain from the "tactic of injecting personal insults into proceedings" was the main reason why the Illinois Supreme Court refused to allow his admission to that state's bar. See Martin v. Marko, 651 So.2d 819 (Fla. 4th DCA 1995)(quoting In re Martin-Trigona, 55 Ill.2d 301, 302 N.E.2d 68 (1973), cert. denied, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974)). In both of the instant petitions, Martin repeatedly demeaned a number of circuit and district court judges, accusing one judge, for example, of "trumping up yet another crackpot contempt proceeding." In addition to insulting circuit and district court judges, he asserts that his most recent cases in this Court were denied because there is a new Jewish justice on the Court. He asserts that this justice is "apparently *390 Jewish, thereby validating the public perception that Jewish judges are using their official positions to pervert the law against petitioner.... Since there is nothing else in petitioner's life which would suggest the extraordinary treatment and monolithic harassment which is being directed at petitioner by judges, the only excuse which does appear, retaliation by Jewish judges."
One of the items Martin has just recently submitted to this Court in his supplement to the record is a letter to the Clerk of the Fifteenth Judicial Circuit Court. In that letter Martin asserts that the document he is attempting to file involves "an appeal from [a judge's] goofy order" and that "[the judge] ... dream[s] he is a dictator[.]" This Court cannot permit Martin to continue to abuse the system by freely filing abusive petition after abusive petition.
Martin next asserts that he should not be sanctioned because he has been forced to file so many cases because his rights have been violated so many times and that since he had not litigated all his claims in this Court, they could not be procedurally barred. Since the 1980 constitutional revisions, however, the district courts now constitute the courts of last resort for the vast majority of litigants. See In re Amendments to Fla. Rules of Appellate Procedure, 609 So.2d 516, 526 (Fla.1992). This Court has already ruled that the merits of Martin's case will not be heard again. A person should not be permitted to litigate the same claims over and over again merely because he continues to believe he has always been right. Martin has had many, many opportunities to litigate his grievances. At some point, it must stop.
Martin also asserts that this Court cannot prohibit him from filing as an indigent pursuant to the decision in Procup v. Strickland, 792 F.2d 1069 (11th Cir.1986). Procup, however, does not support Martin's assertion. In Procup, a federal district court imposed a broad injunction upon a Florida inmate who had, in the Eleventh Circuit Court of Appeals' words, "engaged in ridiculously extensive litigation." Id. at 1070. The injunction prohibited the inmate from filing any litigation without the signature of an attorney. The Eleventh Circuit concluded that due in part to Procup's tendency to sue his attorneys, no attorney would want to represent Procup and thus, Procup would effectively be barred from filing lawsuits. The Eleventh Circuit found that the district court's injunction was overbroad. It did not, however, rule that the district court could not limit Procup's ability to litigate. It remanded the case to the district court for modification of the injunction. Id. The Eleventh Circuit discussed a number of permissible ways to restrict an abusive litigant, including permitting the litigant to file as an indigent only when asserting claims alleging actual or threatened physical harm, and requiring payment of a filing fee to bring other claims. Id. at 1072. The Eleventh Circuit concluded that "there should be little doubt that the district court has the jurisdiction to protect itself against the abuses that litigants like Procup visit upon it." Id. at 1073. The Eleventh Circuit then cited, as its authority for that proposition, a case in which the litigant was this very petitioner: Anthony Martin. See In re Martin-Trigona, 737 F.2d 1254 (2d Cir.1984), cert. denied, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986). In Martin-Trigona, the Second Circuit Court of Appeals court noted that:
[T]he appellant needs no introduction. He is the source of literally hundreds of lawsuits, motions and miscellaneous pleadings, all but a small fraction of which lack any merit whatsoever. Viewing Martin-Trigona's litigious conduct in its entirety yields the inescapable conclusion that he persistently resorts to legal processes without regard to the merits of the claims asserted and that he invokes those processes largely to harass persons who have unluckily crossed his path. His abuse of legal processes is exemplified not only by the number and *391 variety of meritless actions but also by his recent use of pleadings and other legal papers, the contents of which are set out in their appalling detail in the district court's opinion, as a vehicle to launch vicious attacks upon persons of Jewish heritage.
... Judge Weinfeld has had occasion to observe
that Martin-Trigona has over the years filed a substantial number of lawsuits of a vexatious, frivolous and scandalous nature. He has been a persistent and calculating litigator. There is a long trail of such actions commenced by him against federal and state judges, bar examiners, public officials, public agencies, lawyers and individuals who in one way or another had any relationship, directly or indirectly, to any matter concerning him.

Martin-Trigona v. Brooks & Holtzman, 551 F.Supp. 1378, 1384 (S.D.N.Y.1982). Another circuit has commented that Martin-Trigona's "tendency ... to exaggerate, to believe himself the victim of conspiracies where none exist, and to suspect without any reasonable basis that others are persecuting him is evident from many of his filings in this record." Martin-Trigona v. Gouletas, 634 F.2d 354, 362 (7th Cir.), cert. denied, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980).
737 F.2d at 1256-57.
Martin asserts that denying him indigency status in any pro se actions filed in this Court would result in the denial of his constitutional rights to counsel in a criminal case. Martin's fears are unfounded. This case is not a criminal case. Nor does this Court's sanction cover criminal actions or actions in other courts. It only denies Martin indigency status if he files a pro se civil action in this Court invoking this Court's jurisdiction under article V, section 3(b)(7) and (8) of the Florida Constitution. Should Martin find himself incarcerated again, he would still have the ability to file a legitimate petition for writ of habeas corpus in this Court, or any other court, regardless of his financial status, because in this State, petitions for writ of habeas corpus are free. See Art. I, § 18, Fla. Const. Nevertheless, the Clerk of this Court is hereby instructed to be particularly vigilant in reviewing Martin's filings to determine whether they are genuine habeas petitions. Furthermore, pursuant to our recent decision in Harvard v. Singletary, 733 So.2d 1020 (Fla.1999), should Martin present a legitimate habeas corpus or other writ petition to this Court which presents substantial issues of fact or presents individualized issues that do not require immediate resolution by this Court, this Court will transfer that petition to an appropriate circuit or district court. Finally, should Martin abuse this Court's habeas corpus jurisdiction, this Court may consider additional restrictions on Martin's ability to file lawsuits.
Lastly, Martin asserts that this Court should not sanction him because he has won some of his lawsuits. This Court concludes that while Martin may have had some limited success in his twenty or so years of relentless litigation, that fact does not mean that this Court must continue to allow Martin to abuse the system and monopolize its time. This Court has the authority, perhaps even the duty, to stop litigants like Martin from abusing it and the people, as the Second Circuit put it, "who have unluckily crossed his path." See Martin-Trigona, 737 F.2d at 1254.
The Fourth District Court in its decision in Martin v. Marko properly described Martin's petitions as containing "scandalous personal insults" and "scurrilous allegations." 651 So.2d at 820-821. It was true of the petitions filed in that court in 1995 and it is true of the petitions filed in this Court. Martin has not mended his ways or decreased his filings at all, despite having already been sanctioned by several courts, both state and federal. Therefore, this Court concludes that it is presented with an extreme situation and that there is *392 a need to impose a significant restraint upon Martin. This Court has recognized that "[t]he resources of our court system are finite and must be reserved for the resolution of genuine disputes." Rivera v. State, 728 So.2d 1165, 1166 (Fla.1998).
The United States Supreme Court itself has restrained indigent petitioners who have abused the system in order to allocate the resources of the Court "in a way that promotes the interests of justice." In re McDonald, 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989). The Supreme Court has realized that "paupers filing pro se petitions are not subject to the financial considerations ... that deter other litigants from filing frivolous petitions" and that "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources." Id. See also Attwood v. Singletary, 516 U.S. 297, 116 S.Ct. 769, 133 L.Ed.2d 721 (1996) (requiring petitioner to pay docketing fees for petitions for certiorari in noncriminal matters after filing nine frivolous petitions within two years); Day v. Day, 510 U.S. 1, 114 S.Ct. 4, 126 L.Ed.2d 1 (1993) (requiring petitioner to pay docketing fees for petitions for certiorari after filing 27 petitions within nine years); Martin v. District of Columbia Court of Appeals, 506 U.S. 1, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992) (requiring James Martin to pay docketing fees for petitions for certiorari in noncriminal matters after filing 45 petitions within ten years); In re Sindram, 498 U.S. 177, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991) (requiring petitioner to pay docketing fees for extraordinary writs and petitions after having filed 43 petitions within three years); In re McDonald, 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) (requiring petitioner to pay docketing fees for extraordinary writs and petitions after having filed 73 separate filings with the Court).
The Court hereby instructs the Clerk of this Court to accept no pro se writ petitions filed by Anthony R. Martin unless they are legitimate petitions for habeas corpus or are accompanied by the appropriate filing fee. Should any such pleadings be filed, they will be placed in an inactive folder and will not be returned to Martin. Should any pleadings be currently pending in which the filing fee has not been paid, such pleadings shall be dismissed unless the filing fee is paid by February 21, 2000. This order encompasses only civil actions filed pursuant to this Court's extraordinary writ jurisdiction under article V, section 3(b)(7) and (8) of the Florida Constitution. The Clerk of this Court is further instructed to vigilantly examine all filings submitted by Martin which purport to invoke this Court's exclusive jurisdiction under Article V, section 3(b)(1)-(6), of the Florida Constitution. Should any pleadings improperly seek such jurisdiction, the pleading shall be immediately dismissed.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, LEWIS and QUINCE, JJ., concur.
PARIENTE, J., recused.
NOTES
[1] Case No. 94,774 was filed on January 27, 1999 and concerns the same matterthe refusal by both the Fourth District Court of Appeal and the Fifteenth Judicial Circuit to permit Martin to file civil suits without submitting a filing fee.